ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona
SHARON K. SEXTON
Arizona State Bar No. 012359
Email: Sharon.Sexton@usdoj.gov
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>Georgina Warren,<br><br>　　　　Defendant. | No. CR-17-8315-PCT-SPL<br><br>**UNITED STATES' MOTION FOR UPWARD DEPARTURE AND/OR VARIANCE AND SENTENCING MEMORANDUM** |

　　　　The United States submits this sentencing memorandum requesting that this Court grant an upward departure and/or variance and sentence Defendant to a total prison term of 10 years.[1] The government further requests thirty-six months of supervised release.

　　　　An upward variance is warranted, as recommended by the probation officer, pursuant to 18 U.S.C. Section 3553(a). Further, the government requests an upward departure based on U.S.S.G. § 5K2.21 (Dismissed and Uncharged Conduct); and U.S.S.G. § 4A1.3 (Inadequacy of Criminal History Category). Any of these bases alone or combined justify the requested sentence of ten years, which is in the best interests of justice.

## Analysis and Argument

　　　　The Sentencing Guideline range is "the 'starting point and the initial benchmark,'" which should "be kept in mind throughout the process." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc) (citations omitted). After considering the Sentencing

---

[1] The court can accomplish this by adopting the probation officer's recommendation for variance pursuant to 18 U.S.C. § 3553(a) and by adopting the government's requested additional 6-level upward departure.

Guideline range, the "district court should then consider the § 3553(a) factors to decide if they support the sentence suggested by the parties." *Id*. Sentences that significantly depart from the Guideline calculation require the Court to "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id*. at 991-92.

### I.     18 U.S.C. § 3553(a) Upward Variance

Title 18, United States Code, Section 3553(a) requires that this Court impose a sentence "sufficient but not greater than necessary," based on the following factors:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed —

    a.  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    b.  to afford adequate deterrence to criminal conduct;

    c.  to protect the public from further crimes of the defendant; and

    d.  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a). To justify her recommended sentence, the PSR writer has moved for an upward variance pursuant to 18 U.S.C. § 3553(a) (Draft PSR at pg. 17). The government believes that the probation officer's request for an upward variance is appropriate, but believes the facts support a higher upward variance to a prison term of 10 years.

Victim Georgeson Warren was not a nice guy; he had a violent history and had previously served time in prison for aggravated assault. He was not a nice guy on the day he was murdered: he had thrown a bottle and a rock at a resident of a home who had come outside to tell him to go away. Nonetheless, he did not deserve to be murdered in cold blood by his angry sister, Defendant Georgina Warren.[2]

---

[2] The facts contained herein are all detailed in the discovery provided to defense counsel and are contained in Exhibit 1, which is part of such discovery.

1    On September 2, 2017, Defendant Warren was at the home of Vanessa Jones and Anthony Cly.  On this date, Defendant Warren woke Vanessa Jones and told her "my brother's outside."  (Vanessa Jones and Anthony Cly were known bootleggers on the reservation and Victim Georgeson and two of his friends came to their residence to get alcohol).  Bootlegger Vanessa Jones went outside and told the men not to approach the property.  Victim Georgeson picked up a rock and threw it at Vanessa Jones' vehicle.  Victim Georgeson then picked up a bottle and threw it at Vanessa Jones, which hit Vanessa Jones in the arm.  Vanessa Jones kicked the bottle toward Victim Georgeson, who picked up the bottle again and threw it at Vanessa Jones, striking her in the stomach.  Victim Georgeson did not have any firearm on this day.  Defendant Warren told Vanessa Jones that she only fired a weapon in the air, not at Victim Georgeson. (Exhibit 1: Bates 44-45; 48-49).

    Jameson Holiday was one of the men with Victim Georgeson on this date.  He told law enforcement that Anthony Cly and Vanessa Jones were the "local bootleggers" and that this is why they were at the home on this date.  Mr. Holiday went to the front door while Victim Georgeson decided to stay back because his (Georgeson's) sister (Defendant Warren) might be at the house.  When Mr. Holiday was at the door, Defendant Warren said "who's that fucker," (seemingly referring to Victim Georgeson.)  Defendant Warren threatened "you have 10 seconds or I will get my gun."  Defendant Warren came out with a .22 rifle and Victim Georgeson said "shoot me bitch."  Mr. Holiday heard 4-5 shots from the rifle and heard bullets fly by him as he, himself was running away.  Mr. Holiday knew Defendant Warren and Vanessa Jones to be users of methamphetamine; he believed both were high on the date of the shooting.  Mr. Holiday believed that Defendant Warren shot Victim Georgeson on purpose. (Exhibit 1: Bates 48-49).

    Cheyenne Scoval, Defendant Warren's girlfriend, saw Victim Georgeson throw a bottle at Vanessa Jones.  Ms. Scoval saw Defendant Warren fire a gun at Victim Georgeson.  She believed that Defendant Warren fired the gun 3 to 4 times.  After the shooting, she heard Defendant Warren say "Fuck, I hit my brother."  Despite Defendant Warren's

1  apparent knowledge that she hit her brother, upon information and belief, Defendant
2  Warren never went to his aid and never sought medical attention for him. (Exhibit 1: Bates
3  42).

4      Bootlegger Anthony Cly told law enforcement that he heard the males outside and heard Vanessa Jones tell the men to go away. He heard Defendant Warren go outside and tell the men to leave the area. After Vanessa Jones told the group that she had been hit by a bottle, Anthony Cly saw Defendant Warren grab a BB gun and go outside. Defendant Warren then came back inside, returned the BB gun and grabbed a .22 rifle. Anthony Cly heard a shot. Defendant Warren then came into the house and said "I shot in the air." (Exhibit 1: Bates 46).

    Defendant Warren was interviewed by the FBI and gave various stories about what happened on this date. She confirmed that she grabbed a BB gun and "was going to shoot it up." When she was outside, the men yelled at her, so she went back into the house and grabbed the .22 rifle. She told law enforcement that she "did not know the gun was loaded." Defendant Warren first said she pointed the gun in the air, pulled the trigger once and it went off. She said she did not realize she shot her brother (despite the fact that she told her girlfriend that she hit her brother.) Defendant Warren then changed her story and said she pointed the gun at the ground and fired it because she wanted the men to leave. She estimated that approximately 10 to 15 minutes passed between the time Vanessa Jones had been hit with the bottle and the time that she shot her brother. (Exhibit 1: Bates 4-6).

    Defendant Warren believed that Victim Georgeson was about 100 feet away when she shot at him. The evidence diagram is consistent with this estimate. (Exhibit 1: Bates 6, 68). Defendant Warren said that she shot one time, despite the statements of at least two witnesses that she fired between 3 to 5 rounds. To believe Defendant Warren, that she shot a single time, would mean that she had a dead-eye, perfect aim at Victim Georgeson when she shot him through the chest, or that she simply had a very unlucky, accidental single shot that happened to hit him in the chest.

Only 4 months after she shot and killed one brother, Defendant Warren threatened to kill another brother. On January 2, 2018, Defendant Warren was drunk at her home. Brother Gordon saw that she was drunk and angry and thus, he tried to chase her out of the home. Defendant Warren held her hand, in the gesture of a gun, pointed her finger at Gordon and said "you're next, boom." She also brandished a 12-inch kitchen knife, which she pulled out of her pocket. (Exhibit 1: Bates 96-97).

After Defendant Warren was arrested for this homicide, she was released. A petition to revoke her release was thereafter filed because she failed to remain law abiding and in fact had used methamphetamine.

The facts of this case justify a 10-year sentence. Defendant Warren clearly had time to consider her actions. She believed at least 10 to 15 minutes elapsed from the time Victim Georgeson threw a bottle and the time that Defendant Warren killed him. Bootleggers Cly and Jones were safely in their home, as were Defendant Warren and girlfriend Cheyenne Scoval. There was no immediate danger. Defendant Warren first threatened the men with a BB gun. When that did not work, she obtained the .22 rifle. She fired it at all three men, not just her brother. Jameson Holiday heard the shots near his head as he ran for his life. Defendant Warren had no regard for the safety of the other two men.

Defendant Warren clearly intended to shoot her brother on this date. She shot him once through the chest, refuting any allegation that this was an "accident." Further, she told her girlfriend that she shot her brother. If she had only accidentally shot him, surely she would have gotten him medical attention. She did not, but rather, let him lay on the ground bleeding from his gunshot wound.

Defendant's criminal history, in particular, her threats of violence to another brother, in effect to shoot him, are extremely troubling. This conduct is not the action of an extremely remorseful sister. Rather, it is the conduct of a troubled, angry, dark-hearted woman who acted as if the prior shooting were a badge of courage and that she would not hesitate to use the same remedy against another brother. The threats with a knife evidence that same dark heart. Finally, when she was given an opportunity to clean up her life on

pre-trial release, she violated the order of the court and used methamphetamine. All of these facts support a 10-year sentence based on Title 18, United States Code, Section 3553(a).

**II.  U.S.S.G. § 5K2.21 Upward Departure: Dismissed and Uncharged Conduct**

The original charges in this case included Second Degree Murder and 924(c). Second Degree Murder carries a potential sentence of life in prison. The 924(c) charge carries a maximum term of life in prison, and a mandatory sentence of 10 years. If Defendant had shot and killed a stranger in this same manner, she would not have been afforded the benefits of this plea agreement. However, upon first meeting Victim Georgeson's family, and throughout other meetings with them, they continued to urge for leniency towards Defendant Warren. It is unknown if they too believed Defendant Warren, that this was simply an "accident," or if the pain of losing two family members was simply too great for them. However, the government has paid great deference to Victim Georgeson's family by making this very lenient plea offer. Further, shortly after this case was charged, it became apparent that Bootleggers Cly and Jones (who are also family to Defendant Warren) would likely side with Defendant Warren and try to support her version of the events, and perhaps retract some of their earlier statements. Finally, Defendant Warren will have to live with the fact that she murdered her own brother, a hefty emotional sentence that counsel undersigned will not attempt to minimize.

Despite the wishes of Victim Georgeson's family, as well as the potential adversity to the prosecution of this case, the facts show that Defendant Warren was given a huge benefit from this plea agreement. Thus, this court can consider this benefit pursuant to U.S.S.G. § 5K2.21. The government submits that this guideline thus supports the requested 10-year sentence.

**III.  U.S.S.G. 4A1.3 Upward Departure: Inadequacy of Criminal History Category**

An upward departure can also be warranted "if reliable information indicates that

the defendant's criminal history category substantially underrepresents…the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3(a)(1). Among other things, this information can include "prior similar adult criminal conduct not resulting in a criminal conviction." U.S.S.G. § 4A1.3(b)(E).

In the case at bar, Defendant Warren stands before the court with the same criminal history category as a person who has never before committed a criminal offense. She stands before the court without any adjustment for or consideration of the extremely repulsive, criminal act of threatening to shoot a second brother and threatening him with a knife. The sentencing guidelines allow this court to consider her criminal history that has not increased her criminal history category. She should be treated more harshly than a person with no criminal history.

## Conclusion

The United States submits that a total sentence of 10 years is sufficient, but not greater than necessary to satisfy the objectives of 18 U.S.C. § 3553(a). Based on the foregoing, the government respectfully requests that this Court grant the government's motion for upward departure and/or variance and impose a ten-year prison term.

Respectfully submitted this 2nd day of August, 2018.

ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona

 *s/ Sharon K. Sexton*
SHARON K. SEXTON
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**
I hereby certify that on this same date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing a copy to the following CM/ECF registrants: Marc Victor, *Attorney for Defendant* and Susan Narkevich, U.S. Probation.

*s/ Marjorie Dieckman*
U.S. Attorney's Office